IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARLOS J. VEGA, et al.,          :
                                 :          No. 4:06-cv-02287
          Plaintiffs,            :
                                 :
     v.                          :          Judge John E. Jones III
                                 :
RAYMOND NESTOR, et al.,          :
                                 :
          Defendants.            :
                                 :

## ORDER

**August 27, 2010**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**:

Pending before the Court are Motions for Sanctions Pursuant to F.R.C.P. 37 filed by Defendants Matthew Nestor (Doc. 147), Jamie Gennarini (Doc. 143), Neil Reese and the Borough of Shenandoah. (Doc. 142). On April 1, 2010, a hearing was held on the Motions. Thereafter, the parties filed post-hearing submissions. Thus, this matter is fully ripe for our review.

## I.    BACKGROUND

This action, which was filed on November 27, 2006, has a long and meandering procedural history that is well-known to the parties and the Court.[1]

---

[1] A full exposition of the procedural history of this matter is not necessary for the disposition of these Motions, thus we shall only highlight the procedural background of this matter where necessary.

This lawsuit arises out of Plaintiffs' claim that their son, David Vega, was murdered while in the custody of the Shenandoah Police Department and thereafter, the Defendants staged the scene to make it appear as though he had committed suicide.  Plaintiffs assert a variety of claims pursuant to 42 U.S.C. § 1983, the Pennsylvania Constitution, and common law.

This case has been beleaguered by all manner of discovery disputes, causing the discovery deadlines to be extended multiple times.  Most recently, in December of 2009, we entered a scheduling Order setting the discovery cutoff date for January 30, 2010.  (Doc. 124).  Thereafter, on February 9, 2010, Plaintiffs' former attorney, John P. Karoly, Jr. ("Karoly"), contacted this Court's chambers, via telephone, to advise the Court that he was in possession of statements[2] from a witness named Angela Pleva[3] ("Pleva") that he believed he was obligated to disclose to defense counsel but had not yet been turned over, despite the already passed discovery cutoff.

Karoly sought the Court's advice about how to proceed, informing us that he believed the statements were of a potentially confidential nature and their

---

[2] Karoly was in possession of two statements given by Pleva.  The first was a written statement given by Pleva to Karoly in his office on December 7, 2008.  The second was a January 18, 2010 statement given by Pleva under oath and before a court reporter in Karoly's office, with only Plaintiffs' counsel present.

[3] Pleva is the ex-girlfriend of Defendant Matthew Nestor and the mother of his child.

2

release could impact an ongoing investigation by the United States Attorneys'
Office.  As requested, Karoly e-mailed the statements to the Court for our review.
Out of an abundance of caution, we immediately contacted the United States
Attorney and were informed that disclosure of the statements would not impair any
ongoing federal criminal investigation.  Thus, we contacted Karoly[4] and informed
him that "there was no impediment, in the Court's view, to immediate disclosure of
the statements to defense counsel," and that he should "follow the rules."  (Hearing
Transcript, pp. 6-7 and 31).  Thereafter, by letter dated February 17, 2010, Karoly
disclosed both statements to defense counsel. (Doc. 163, Ex. 10).

On February 23, 2010, in conformity with our practice orders, defense
counsel filed letters with the Court informing the Court of the late disclosure of
Pleva's statements and requesting a telephonic discovery conference with the
Court.[5]  (Docs. 129, 130, 131).  Defendant Nestor also filed a Motion for Protective
Order (Doc. 132), requesting that the Court enter an Order preventing Plaintiffs
from filing Pleva's statements on the docket.  On February 24, 2010, we issued an
Order (Doc. 133) granting Defendant Nestor's Motion for a Protective Order and

---

[4] It is the Court's recollection that approximately one week passed between Karoly's
initial contact with Chambers and our response to him.

[5] It is well to note that at the time Karoly disclosed Pleva's statements to defense counsel,
defense counsel was unaware of Karoly's *ex parte* communications with the Court.

permitting the Defendants to file Motions for Sanctions without first conducting a telephonic discovery conference.[6]  On March 1 and 2, 2010, the Defendants Motions were filed (Docs. 142, 143 and 147), and a hearing was conducted on April 1, 2010.  Defendants move the Court to dismiss this action in its entirety pursuant to Fed. R. Civ. P. 37.

## II.    STANDARD OF REVIEW

Fed. R. Civ. P. 37 provides the Court with a variety of sanctions we may impose for a party's failure to obey a discovery order.  In extreme cases, the appropriate sanction may be dismissal of the action, in whole or in part.  In determining whether dismissal in an appropriate sanction, district courts apply and balance the six factors identified by the United States Court of Appeals for the Third Circuit in *Poulis v. State Farm Fire and Casualty Company*, 747 F. 2d 863 (3d Cir. 1984).  Those factors are:

1)    The extent of the party's personal responsibility;

2)    The prejudice to the adversary;

3)    A history of dilatoriness;

4)    Whether the attorney's conduct was willful or in bad faith;

---

[6] Recognizing the import of the sanctions motions that were about to be filed, on March 1, 2010, we struck this case from our trial list and vacated all case management dates.  (Doc. 140).

4

5)      The effectiveness of alternative sanctions; and

6)      The meritoriousness of the claim or defense.

We shall discuss the application of each of the *Poulis* factors to the matter before the Court.

## III.   APPLICATION OF *POULIS* FACTORS

1.      The Extent of the Party's Personal Responsibility

Testimony elicited at the hearing revealed that Plaintiff Carlos Vega, Sr., the decedent's father, originally contacted Pleva and subsequently informed Karoly about Pleva's desire to provide a statement.[7]  Thereafter, Karoly ascertained the December 2008 statement from Pleva.

However, while Plaintiffs were aware of the existence and nature of Pleva's statement, they are represented by counsel in this case, and are entitled to rely on counsel in a variety of respects.  For example, Plaintiffs, as laypersons, were entitled to rely on Karoly to ensure that he complied with discovery obligations, the Federal Rules of Civil Procedure, and orders of this Court.  There exists no evidence in the record to indicate that the Plaintiffs were aware that counsel was withholding Pleva's statements in violation of Court orders or the discovery rules.

---

[7] Plaintiff Vega learned about Pleva's knowledge of his son's death through contacts in the small community of Shenandoah.

5

We simply cannot find that the Plaintiff's were complicit in the conduct of Karoly, and thus we shall not attribute their attorney's conduct to them.

2.      Prejudice to the Adversary

The Defendants are potentially prejudiced by the late disclosure of Pleva's statements in several ways.  As noted, the discovery period in this case officially closed on January 30, 2010.  If discovery remains closed in this case, the Defendants are clearly prejudiced by the existence of Pleva's statements because they will be unable to conduct her deposition prior to trial or take other discovery that could flow from the existence of her statement.  Further, if discovery is re-opened in light of Pleva's statements, the Defendants will suffer prejudice in the form of costs for further discovery and the continuing delay of the resolution of this case.[8]

However, this potential prejudice is not incurable.  To be sure, it would be quite draconian of the Court to refuse to re-open discovery in the face of the eleventh hour disclosure of the Pleva statements.  Pleva's statements go to the ultimate factual issue of this case – whether David Vega was beaten to death by members of the Shenandoah Police Department (including Defendant Nestor), as

---

[8] Quite frankly, the Plaintiffs are also prejudiced by the protraction of this matter due to the late disclosure of the Pleva statements.

6

Plaintiffs contend, or whether he committed suicide while in police custody, as

Defendants contend.  Permitting Pleva's statements to be used on summary

judgment motions or to allow her to testify at trial without first permitting the

Defendants to test her credibility and ascertain the extent of her knowledge through

a deposition would be fundamentally unfair.  However, if we permit discovery to

be re-opened and allow the Defendants a full opportunity to conduct discovery that

flows from the revelation of Pleva's statements, the prejudice to the Defendants

significantly wanes.[9]

> 3.    History of Dilatoriness

As noted above, this case has been plagued with dilatory conduct by

Karoly.[10]  The instant scenario is, quite frankly, the icing on the cake of a four year

old litigation littered with discovery disputes largely caused by or compounded by

Karoly's conduct.  Indeed, we cannot recall any other attorney during our tenure on

the bench who so consistently attempted to "game" discovery, and generally flout

the Rules.  Karoly's conduct in this and many other cases was a blemish on the

---

[9] Additional costs to be incurred by the Defendants in the event of re-opened discovery will be addressed in our analysis of availability of additional sanctions.

[10] In May of this year, Karoly was sentenced to six and a half years in prison for his convictions for tax evasion, mail fraud and money laundering in the Eastern District of Pennsylvania.  Accordingly, we believe that he has surrendered his license to practice law in the Commonwealth of Pennsylvania.

legal profession, and we do not in any way condone his blatantly unethical actions.

It thus follows that if this factor were dispositive to the Court's analysis, it is

without question that the matter should be dismissed.  However, the *Poulis* factors

are to be balanced and weighed against one another by the Court, and the

determination of whether to dismiss or alternatively sanction the violating party

must be made with a view towards fairness and justice.

4.     Willfulness or Bad Faith of Counsel

At the hearing, Karoly presented Attorney Robert H. Davis, Jr. as a

witness.[11]  Attorney Davis testified that he was contacted by Karoly, and that they

discussed the matter of Pleva's statement.  In particular, they discussed the fact that

Pleva was in fear of bodily harm from Nestor as a result of her giving Karoly her

statement and that Pleva prohibited Karoly to reveal the statement to anyone aside

from law enforcement without her prior authorization.  Karoly sought Attorney

Davis' advice on how he should proceed, recognizing the conflict he had in regards

to representing his client and adhering to Pleva's restrictions.  Attorney Davis

testified that he advised Karoly that he could not disclose Pleva's statement while

Pleva was in actual fear of her life or bodily safety. (Hearing Transcript, p. 56).

However, despite the receipt of an ethics opinion from Attorney Davis, we

---

[11] Attorney Davis is the former Chief Counsel to the Pennsylvania Disciplinary Board.

still find that Karoly acted with an element of wilfulness and bad faith in withholding the statement from the Defendants.  In particular, we are troubled that Karoly waited over a year from when he took Pleva's first statement to contact the Court for directions about how to proceed.  Had Karoly contacted the Court earlier, or filed a motion for a protective order, it is likely that the instant motion practice never would have occurred and the case would not suffer yet another delay.

    5.    <u>Effectiveness of Alternative Sanctions</u>

Defendants recognize that re-opening discovery and requiring Karoly to bear the costs of further discovery is an possible alternative sanction, however they contend that this sanction cannot cure the prejudice they suffer by the late disclosure of Pleva's statements.  In support of this position, the Defendants argue that the evidence is "stale," noting that Pleva's first statement was taken in December of 2008.

We find that the re-opening of discovery for the Defendants to take additional discovery in light of Pleva's statement at the cost of Plaintiffs' counsel[12] is a very appropriate and remedial alternative sanction.  While it is true that Pleva first gave her statement to Karoly in 2008, and then again in 2010, we do not find

---

[12] As previously noted, Karoly himself no longer represents the Plaintiffs in this matter. However, Karoly's law firm, Karoly Law Offices, P.C., continues to represent Plaintiffs.  Thus, the costs of Defendants' future discovery will be appropriately born by the Karoly Law Offices, P.C.

that her testimony is "stale" based solely on its age.  We had the full opportunity to observe Pleva when she testified at the hearing and she did not seem to have any trouble whatsoever recalling the events giving rise to her statements to Karoly. Her memory seemed to be acute and intact.  She neither recanted, nor did she retreat from her testimony on direct examination or cross-examination.

To be clear, the Defendants shall be permitted to conduct discovery that reasonably flows from the information contained in Pleva's statements.[13]  We shall not permit the Plaintiffs to conduct any additional discovery whatsoever.[14]  It is our view that by permitting the Defendants to conduct further discovery, the prejudice to them based on the late disclosure is minimal, at best.

6.    Meritoriousness of the Claim

On balance, perhaps the most compelling factor to the Court is the potential meritoriousness of the claims.  Under *Poulis*, a plaintiff's claim is "deemed

---

[13] We recognize that the Defendants' alternative position is to preclude Pleva and her statements from being used in this litigation, either on summary judgment or as a witness at trial. Inasmuch as the information given by Pleva in her statements is, quite frankly, of vital importance to the prosecution of this matter, preclusion of her statement could be considered tantamount to a dismissal of this action.  We find the better course to be permitting the Defendants to conduct additional discovery based on the disclosure of her statements.

[14] It is important to note that Karoly was in possession of Pleva's statement while conducting other discovery in this case.  In fact, Defendants; counsel represented to the Court at the hearing that, after the disclosure of Pleva's statements to them, it was clear, in hindsight, that Karoly posed deposition questions to the Defendants that were developed from the information in Pleva's statements.

meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff." *Poulis*, 747 F. 2d at 870.  Here, Plaintiffs claim that their son, David Vega, was beaten to death by Shenandoah Police Officers while in their custody and that the officers then staged the scene to make it appear as though David Vega had committed suicide by hanging himself.  These allegations, if accepted as true by a factfinder, would clearly result in a finding of liability and an award of damages against the Defendants.  Due to the slow progress of this case, no factual record has been developed, inasmuch as summary judgment motions have not yet been filed, thus we must evaluate the claims of the Plaintiffs on the basis of the pleadings. We do find that the Plaintiffs' claims have arguable merit, and thus, we find that dismissal would be too harsh a penalty here.

## IV.    CONCLUSION

Based on the foregoing analysis, we find that, after a balancing of the *Poulis* factors, the sanction of dismissal is not appropriate here.  However, the Defendants' Motions shall be granted to the extent that discovery shall be reopened for the Defendants only and Plaintiffs' counsel shall bear the costs of all  future discovery necessitated by the failure to disclose Pleva's statements as detailed hereinabove.  In all other respects, the Motions shall be denied.  Additionally, we shall grant the Defendants' leave to file a motion for attorneys' fees for the fees

expended on the litigation of the instant motions.[15]

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Motions for Sanctions Pursuant to F.R.C.P. 37 filed by Defendants Matthew Nestor (Doc. 147), Jamie Gennarini (Doc. 143), Neil Reese and the Borough of Shenandoah.  (Doc. 142) are **GRANTED** to the following extent:

   a.      Discovery shall be reopened for the Defendants only, for the purposes of conducting discovery that is reasonably related to the disclosure of the statement of Angela Pleva.

   b.      Plaintiffs' counsel shall bear the costs of the discovery.

   c.      Defendants' are granted leave to make a motion for attorneys' fees related to the costs of litigating the instant motions.

   d.      In all other respects, the Defendants' Motions are **DENIED**.

2.      This case shall be placed on the April 2010 trial term.  The discovery cutoff date is December 15, 2010.  Dispositive motions deadline is January 4, 2011.  Pretrial conference shall be conducted on March 1, 2011.  Jury selection shall commence on April 4, 2011.

---

[15] To the extent possible, the Court would appreciate if the Defendants endeavored to file a joint motion and not individual motions in this regard.

s/ John E. Jones III
John E. Jones III
United States District Judge